IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | | |
|---|---|---|
| OSCAR MICHAEL TORRES<br><br>*Plaintiff*,<br><br>vs.<br><br>ANDREW SAUL, COMMISSIONER OF<br>SOCIAL SECURITY<br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 5-19-CV-645-RBF |

**ORDER**

      This Order concerns Plaintiff Oscar Michael Torres's request for judicial review of the administrative denial of his application for supplemental social security income under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). This action comes to the Court pursuant to 28 U.S.C. § 636(c), following the parties' consent. *See* Dkt. Nos. 9, 11 & 12. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g).

      After considering Torres's Brief, Dkt. No. 14, the Brief in Support of the Commissioner's Decision, Dkt. No. 15, the transcript of the administrative proceedings ("Tr."), Dkt. No. 10, the other pleadings on file, the applicable authority, and the entire record in this matter, the Court will **REVERSE** the denial of benefits and **REMAND** this matter to the Commissioner for further consideration, as discussed below.

**Background**

      Plaintiff Oscar Michael Torres protectively filed his application for supplemental security income on February 10, 2016, alleging a disability onset date of December 31, 1996. Tr. 171-78.

Torres was 19-years old on his alleged disability onset date and 21-years old at the time of the Administrative Law Judge's (ALJ) decision. Torres graduated from high school with special-education support. *Id.* 28.

Torres's disability claims were initially denied on May 20, 2016, 2013, *id.* 59-69, and once again on December 23, 2016, *id.* 70-79 following his request for reconsideration. Torres then requested and received an administrative hearing. *Id.* 25-58; 113-128. Torres and his attorney attended the hearing on December 12, 201. Torres, his mother, and vocational expert Karen Nielsen testified. *Id.* 25-58.

After conducting a hearing, the ALJ denied Torres's claim for disability benefits, applying the five-step sequential analysis required by the regulations. *Id.* 84-94. At step one of the analysis, the ALJ found Torres had not engaged in substantial gainful activity since the alleged onset date of February 10, 2016. *Id.* 86. At step two, the ALJ found Torres has the following severe impairments: borderline intellectual functioning, autism spectrum disorder, major depressive disorder, and anxiety disorder. *Id.* At step three, the ALJ found that none of Torres's impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security regulations, including Listing 12.05 that concerns intellectual disability and Listing 12.10 that concerns autism spectrum disorder. *Id.* 87-89. With respect to Listing 12.05, the ALJ determined that Torres is only moderately limited in the following four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* Because Torres's mental impairments didn't cause at least two "marked" limitations or one "extreme" limitation, the ALJ concluded that Torres didn't satisfy paragraph B of the listing. *See id.*

Before reaching step four of the analysis, the ALJ found that Torres has the physical residual functional capacity to perform the full range of work at all exertional levels. Mentally, however, the ALJ determined that Torres can:

> Understand, remember, and carry out only simple instructions, use simple judgment, respond appropriately to supervisors, co-workers and unusual work situations, deal with simple changes in a routine work setting with occasional contact with the public, co-workers and supervisors. The jobs should have instructions that are demonstrated as opposed to written; jobs not involving more than simple math skills (simple addition and subtraction); jobs where there is no confrontational contact, such as a customer service representative, at a returns desk or as a collections agent, and jobs where there is no production rate pace such as an assembly line.

*Id.* 89.

After determining that Torres has no past relevant work, the ALJ proceeded to step five. *Id.* 93. At step five, the ALJ found that considering Torres's age, educational factors, and residual functional capacity, as well as the testimony of the vocational expert, there are jobs that exist in significant numbers in the national economy that Torres could perform; namely, the positions of cleaner (Dictionary of Occupational Titles "DOT" # 223.687-010); (2) office cleaner (DOT # 323.687-014); and (3) sorter (DOT # 521.687-086)—work classified as light to medium and at the unskilled (SVP2) level. *Id.* Accordingly, the ALJ determined that Torres is not disabled for purposes of the Act and, therefore, not entitled to receive benefits. *Id.*

Torres's subsequent request for review of the ALJ's finding was denied by the Appeals Council. *Id.* 1-5. Accordingly, on June 11, 2019, after exhausting all available administrative remedies, Torres filed suit for judicial review. Dkt. No. 1.

**Analysis**

Torres argues that the ALJ committed reversible error (1) by failing to adequately assess Torres's mental impairments when determining that Torres doesn't meet or medically equal Listing 12.05B and (2) in forming Torres's residual-functional-capacity assessment. Specifically,

3

Torres argues that the ALJ ignored evidence demonstrating significant intellectual and adaptive-functioning deficits, as well as the need for psychosocial support. For the reasons discussed below, the Court finds that the ALJ erred at step three and this same error infected the residual-functional-capacity analysis. These errors aren't harmless and therefore require remand.

A.  *Listing 12.05 and the Residual-Functional-Capacity Assessment*. At step three of the sequential-evaluation process, an ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria included in any of the listed impairments. 20 C.F.R. § 404.1520(d). To meet the criteria under Listing 12.05B, a claimant such as Torres has the burden of establishing: (1) "[s]ignificantly subaverage general intellectual functioning" evidenced by a full scale IQ score of 70 or below or a full scale IQ of 71 to 75, accompanied by a verbal or performance IQ of 70 or below; (2) "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two," of four delineated areas of mental functioning; and (3) that the mental impairment began prior to age 22. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05. If Torres succeeds in meeting this burden, he is presumptively disabled and there is no need to consider other vocational factors. *See* Social Security Ruling 85-16, 1985 WL 56855 at *1. Otherwise, the ALJ must proceed to the next step in the sequential analysis—assessment of Torres's residual functional capacity—which requires that the ALJ consider "essentially the same impairment-related medical and nonmedical information." *Id.*

The Commissioner doesn't dispute that Torrres's IQ scores satisfy the Listing's criteria or that his mental impairments began prior to age 22. *See* Comm'r Br. at 5. At issue is only whether the ALJ reversibly erred in determining that Torres has moderate limitations in each of the four broad areas of mental functioning—(1) understanding, remembering, and applying

4

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself—and whether the ALJ also reversibly erred in assessing Torres's residual functional capacity. Even viewed as purely a challenge to the substantial evidence, reversal and remand is still required because the record reflects the ALJ impermissibly failed to consider all the relevant record evidence regarding Torres's limitations.

### 1. The ALJ didn't consider the support Torres requires in his daily life.

The record is replete with evidence demonstrating that Torres only functions with substantial support from family members and other caregivers, including teachers. To start, Torres's mother testified that virtually any task given him requires step-by-step instructions, which family members have to repeat several times to ensure Torres's comprehension. Tr. 50-52. Thus, although Torres has held two part-time jobs, his mother explained that he needed continuous instructions throughout both jobs and has never worked without his parents' close supervision or supervision from a coworker intimately familiar with his limitations. *See id.* The ALJ didn't include this testimony in the step-three analysis and largely discounted the testimony, without any valid justification, in forming the residual-functional-capacity assessment. The ALJ reasoned that Torres's mother isn't "medically trained to make exacting observations" and her relationship with Torres likely colored her ability to accurately report his level of functioning. *see id*. 90, 92. While medical *diagnoses* are beyond the competence of lay witnesses, this testimony is relevant to establishing the severity of Torres's impairment and how it affects his functional capacity. *See* 20 C.F.R. § 416.913(a)(4); *see also* § 37:11.Evidence from nonmedical sources, 3 Soc. Sec. Law & Prac. § 37:11. Without more, testimony from a family member shouldn't be discounted solely because it comes from a family member. This testimony shouldn't

have been discounted based on the reasons cited by the ALJ,[1] particularly because the testimony here is uncontradicted and indeed corroborated by medical evidence. Specifically, clinical psychologist Dr. Down diagnosed Torres with "autism disorder, with accompanying intellectual and language impairment, *requiring substantial support*." Tr. 321 (emphasis added); *see also id.* 330.

The ALJ also placed undue emphasis on the fact that Torres graduated from high school, albeit in a special-education program. *See id.* 92. In doing so, the ALJ neglected to consider that Torres required and received significant support throughout school, and even then, consistently failed to achieve grade-level proficiency. *See id.* 281-282; 293, 299, 304, 311, 335. In fact, there's no dispute that essential components of Torres's curriculum were eliminated, and Torres was "not required to meet satisfactory performance [on STARR testing] in order to graduate." *Id.* 299. Torres's graduation—though admirable—simply means that he completed four years of high school; it offers scant insight into his work-related abilities. *See* Texas Education Agency Special Education Graduation Guidance, available at https://tea.texas.gov/academics/special-student-populations/special-education/programs-and-services/state-guidance/graduation-guidance.

Social Security Rulings and agency policy recognize that "psychosocial supports, structured settings, and living arrangements, including assistance from [a claimant's] family or others, may help [a claimant] by reducing the demands made on [him]." 20 C.F.R. Pt. 404,

---

[1] *See, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.") (citation omitted).

Subpt. P., App. 1 § 12.00; POMS DI 34001.032(D)(1).[2] This is because a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [the claimant's] ability to complete tasks in the context of regular employment during a normal workday or work week." POMS DI 34001.032(C)(6). Accordingly, when evaluating the effects of Torres's mental impairments and rating his limitation across the four areas of mental functioning, the ALJ was obligated to consider—but did not consider—"the kind and extent of supports [Torres] receive[s] [and] the characteristics of any structured setting in which [he] spend[s] [his] time." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00; *see also* POMS DI 34001.032(D)(1).

Here, aside from briefly noting that Torres lives with his parents and has no driver's license, *see* Tr. 88, the ALJ didn't discuss any of the aforementioned support, let alone address how receiving it affects Torres in each of the four broad areas of mental functioning. The ALJ should have fully considered Torres's mother's uncontradicted (and medically supported) testimony. The ALJ also should have considered Torres's Individualized Education Program, school records regarding how Torres functioned in a classroom setting, and the accommodations he received at school. *See* POMS DI 34001.032(C)(4).

By failing to recognize the extensive psychosocial support provided by Torres's family, school, and other caregivers both at step three and in the residual-functional-capacity analysis, the ALJ acted on an incomplete picture of Torres's work-related abilities. This same error infects the ALJ's residual-functional-capacity assessment. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.

---

[2] While "POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force," and "may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." Accordingly, " courts generally defer to POMS provisions unless a court determines that they are arbitrary, capricious, or contrary to law." *Bettery v. Commissioner of Social Security*, No. 14-03321, 2015 WL 4742296 at * 7, n. 9 (W.D. La. Aug. 10, 2015).

2000) ("[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

    **2. There is no logical bridge between the evidence cited and the ALJ's conclusion.** There is a disconnect—and a lack of any explanation or substantial evidence to support that disconnect—between the ALJ's conclusion that Torres is only moderately limited in each of the four functional areas and the evidence cited in support of that conclusion. For example, in analyzing Torres's ability to interact with others, the ALJ discussed reports from Dr. Down stating that Torres "had difficulty expressing his feelings and expressing empathy for others," had "*severe deficiencies* in reciprocal social behavior that were clinically significant that lead to *severe and enduring interference with every day social interactions*." Tr. 88 (emphasis added). The ALJ then categorized this limitation as merely moderate while offering no explanation for that conclusion. As for adapting or managing oneself, the ALJ noted that Torres lives with his parents, doesn't have a driver's license, isn't able to pay bills, handle a savings account or use a checkbook, and requires help in understanding or following instructions. *Id.* The ALJ then nonetheless rated this limitation as moderate, again without explaining why. In fact, the ALJ failed to mention that Torres scored in the first percentile on the ABAS-II test, which reflects a very low ranking in an "assessment of daily adaptive skills that are necessary for functioning effectively in day-to-day activities." Tr. 328. Although an ALJ "does not need to comment on every piece of evidence," he "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986, 2010 WL 4683814 (5th Cir. Nov. 18, 2010). The ALJ failed to do so here. Much of the evidence cited by the ALJ appears to support findings of a more than moderately severe limitation.

B.      *Harmlessness*. To warrant remand, the ALJ's errors must be harmful. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The errors here are not harmless, and remand is needed.

An error is harmless when it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Here, the ALJ failed to properly consider evidence that might've led to a conclusion that Torres meets the criteria of Listing 12.05. This same error led to a residual-functional-capacity determination that didn't fully account for all of Torres's limitations. It is certainly conceivable that the ALJ could have reached a different determination at steps three and five absent this error.

C.      *Remand Instructions*. For all these reasons, remand is appropriate. This case will be remanded to the Commissioner for further proceedings consistent with this order. Specifically, the ALJ is directed to fully consider the support Torres receives at home and during part-time employment to determine whether he meets Listing 12.05B. Support received at school should also be considered. If the ALJ determines that Torres doesn't meet the criteria for Listing 12.05B, the ALJ should continue with the remaining steps of the sequential-evaluation process and evaluate Torres's residual functional capacity according to the record as a whole. To the extent the ALJ finds the medical evidence in the record inadequate regarding Torres's mental work-related abilities, the ALJ has a duty to seek additional information on the issue. *See Shugart*, 2013 WL 991252, at *5; *see also Hill v. Astrue*, No. 1:09–CV–165–SAA, 2010 WL 2362129, at *4 (N.D. Miss. Jun. 10, 2010) (discussing the Commissioner's "affirmative duty" to seek additional information to reach a decision) (citing 20 C.F.R. §§ 404.1512(e) and

416.912(e)). If necessary, the ALJ should hold another hearing and obtain new vocational-expert testimony.

## Conclusion

For the reasons discussed above, the ALJ's February 22, 2018 decision that Torres is not disabled is **REVERSED** and this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

SIGNED this 20th day of August, 2020.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE